# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SIDNEY FOSTER, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 14-CV-32 -NJR-DGW |
| LOUIS BROWARD, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Sidney Foster, an inmate currently housed at the Big Muddy River Correctional Center ("BMR"), filed this *pro se* lawsuit pursuant to 42 U.S.C. § 1983. Plaintiff alleges that officials at BMR, at the behest of Defendant Louis Broward[1], refused to move Plaintiff to a different cell after he was threatened by his cellmate. Plaintiff further asserts that his cellmate stole several of his personal possessions.

Now pending before the Court is the Motion for Summary Judgment filed by Defendant Broward on March 30, 3015 (Doc. 22). Plaintiff filed a response on May 1, 2015 (Doc. 27). The Court has carefully considered the briefs and all of the evidence submitted by the parties and for the reasons set forth below, Defendant's Motion is granted.

## BACKGROUND

Plaintiff is an inmate incarcerated at BMR. Defendant is a Lieutenant employed by

---

[1] The Clerk of Court is **ORDERED** to modify the docket sheet to reflect the true spelling of "Lt. Browdard" as "Louis Broward."

the Illinois Department of Corrections and assigned to the A Wing of Housing Unit 2 at BMR. On December 11, 2012, Plaintiff was assigned to Defendant's wing and placed in cell 20 (Doc. 29, p. 13); *see also* Doc. 23-1 at ¶ 3. On that same date, Plaintiff's cellmate told him that he should seek a transfer because he did not want to be housed with a gay person (Doc. 29, p. 13). Also on December 12, 2012, Plaintiff told Defendant that he wanted to be transferred from his cell (Doc. 29, p. 16). Neither Plaintiff nor anyone else communicated to Defendant that Plaintiff was afraid that his cellmate would injure him (Doc. 29, p. 18). Defendant believed that Plaintiff wanted to be moved in order to pursue a sexual relationship with another inmate (Doc. 23-1, at ¶¶ 6, 8). Plaintiff had no further communication with Defendant after December 11, 2012, and prior to being transferred to another cell on February 3, 2013 (Doc. 23-1, at ¶ 7; Doc. 29, p. 27).

Plaintiff stated in his brief in response to the Motion for Summary Judgment as follows:

> The defendant is deliberately indifferent because when he was told of the plaintiff of what his cellmate was doing to him the defendant said that he would move him in three (3) days, the plaintiff, was afraid and the third day the matter worsened the plaintiff was too week to defend himself, the plaintiff felt that they the defendant knew of the back ground of the plaintiff, he knew that before the plaintiff there was another gay person place in that same cell, but that person was release after a week, they knew that the plaintiff cellie hated gay people he entertained his gang members, by choking the plaintiff, only two of them showed anger . . . the rest made fun and laughed at the plaintiff.

(Doc. 27, p. 5 (some grammatical and spelling errors corrected)).

Plaintiff asserts that he informed Defendant that "his cell mate had told him that if he came back in that cell he was going to hurt him" and thereafter Defendant told Plaintiff that he would move him in three days (Doc. 27, p. 6). Instead of being transferred, Plaintiff

contends that his cellmate tortured, beat, and choked him--actions that were all the more brutal because Plaintiff had just undergone heart surgery (*Id.*). None of these statements is supported by a citation to the record.

Plaintiff also submitted a declaration, however, and he avers that on December 11, 2012, he told Defendant that "my cellmate didn't want me in the cell with him, and that he would do something to me, because he can't be in the cell with a ge-she (homosexual)" (Doc. 27, p. 11 at ¶ 3) (some grammatical and spelling errors corrected)). Plaintiff further declared that he did not request a specific transfer location and that Defendant did not approve a cell transfer (Doc. 27, p. 11 at ¶¶ 5, 7).

On March 2, 2015, Plaintiff was deposed (*See* Doc. 29). In his deposition, Plaintiff recounted his conversations with various correctional officers and Defendant during the relevant time period. Plaintiff testified that he talked to Defendant and another correctional officer after his cellmate told him to request a cell change (Doc. 29, p. 14). The other officer, Robinson, told Defendant that Plaintiff only wanted to be moved in order to get back to his lover--a statement which Plaintiff denied (Doc. 29, p. 15). According to Plaintiff, Defendant told Plaintiff that he would be moved within three days (Doc. 29, pp. 17-18). At no point in the deposition is Plaintiff clear about what, exactly, he told Defendant during this conversation (which was the only conversation relevant to his claim) (Doc. 29, pp. 26-27). When prompted to clarify, Plaintiff stated:

> I told them that I need to be in a different cell, I said because he don't want me in there, and they said that he don't run, as I recall right, he don't run this. He said: But I tell you what, in three days I'll get you moved. He said: Just be patient; he called me by my first name, and I accepted that. . . .

(Doc. 29, p. 40).

When Plaintiff was not moved within three days, he personally informed "all the officers" in his cell block (except Defendant) about his cellmate assaulting him (Doc. 29, pp. 27, 27). The officers told Plaintiff to speak with Defendant (*Id.*). Although Plaintiff believes that Defendant prevented his cell transfer, there is no evidence to support this conjecture. Plaintiff was subsequently moved in February 2013. After being moved, Defendant spoke to Plaintiff asking him who authorized the transfer; thereafter, Plaintiff had no conversations with Defendant (Doc. 29, pp. 27-28).

Summarizing the evidence, with inferences drawn in favor of Plaintiff, it appears that on December 11, 2012, Plaintiff informed Defendant that his cellmate did not want to be housed with a gay man. Defendant was told by another correctional officer that Plaintiff merely wanted to be transferred to a different cellblock in order to be with his lover. Plaintiff did not specifically inform Defendant that he was afraid that his cellmate would harm or injure him. Defendant told Plaintiff that he would transfer him within three days. But no transfer occurred within the three days. Plaintiff was subsequently attacked by his cellmate on a number of occasions. Plaintiff never had any conversations with Defendant regarding the attacks. In February 2013, Plaintiff was transferred to a different cell. Following the transfer, Plaintiff had no further communication with Defendant.

## DISCUSSION

### A. Legal Standard for Summary Judgment

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

> party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the Court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial . . . . A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

### B. Failure to Protect

Plaintiff contends that Defendant failed to protect him from his cellmate in violation of the Eighth Amendment. Prison officials have a duty under the Eighth Amendment, "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

To succeed on a failure-to-protect claim, an inmate must first objectively demonstrate that he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Second, he must show that prison officials acted with deliberate indifference to that risk, a subjective inquiry into a prison official's state of mind. *Farmer*, 511 U.S. at 838-39. As explained in *Farmer*, "a prison official cannot be found liable under the Eighth

Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk or serious harm exists, and he must also draw the inference." *Id.* at 837. The prison official may be held liable only if he knows an inmate faces a substantial risk of serious harm and "disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

An official who knows of a substantial risk of serious harm is free from liability, however, if he or she "responded to the situation in a reasonable manner." *Fisher v. Lovejoy*, 414 F.3d 659, 664 (7th Cir. 2005). Furthermore, a showing of negligence, or even gross negligence, is insufficient to prove an official acted with deliberate indifference. The standard is the "equivalent of criminal recklessness." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008) (quoting *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).

Here, the evidence reveals that Plaintiff only had one conversation with Defendant. During that conversation, Plaintiff relayed that he needed to be moved because his cellmate did not want to be housed with him due to his sexual orientation. Defendant told Plaintiff that he would be moved within three days. But Plaintiff was not moved, and he was subsequently attacked by his cellmate. At the time of the attack, Plaintiff had recently undergone heart surgery, was diabetic, and was somewhat physically infirmed. Plaintiff had no further meaningful communication with Defendant (other than telling him who had approved his transfer).

Plaintiff's claim must fail as a matter of law. Plaintiff has not presented any evidence to satisfy the first prong; in other words, that he was at a substantial risk of serious harm at the time he spoke to Defendant. Plaintiff did not indicate to Defendant that he believed he

would be attacked by his cellmate or that he was in fear of his life. A prisoner must demonstrate that prison officials were aware of a specific, impending and substantial threat to his safety, often "by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (quoting *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991)). Rather, Plaintiff only stated that his cellmate did not want to be housed with him because of his sexual orientation. While a beating of one inmate by another "clearly constitutes serious harm," *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005), at the time that Plaintiff spoke to Defendant about being transferred, no such beating had occurred, and Plaintiff did not articulate that he anticipated such a beating. Plaintiff cannot prevail on his claim without a showing that he communicated or that Defendant was aware of a substantial and specific risk of serious harm.

At most, Plaintiff has shown that he informed Defendant Broward that his cellmate did not want to be housed with a gay man and that Defendant agreed to transfer him. There is no evidence that Defendant had any knowledge that Plaintiff's cellmate was violent or that he was particularly violent towards gay persons.

## C. Qualified Immunity

Defendant also argued that he is entitled to qualified immunity. Qualified immunity acts as a protective shield for "government officials against suits arising out of their exercise of discretionary functions 'so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Jones v. Wilhelm*, 425 F.3d 455, 460 (7th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). Officers who act unreasonably, however, are not entitled to use qualified immunity as a defense. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1014 (7th Cir. 2006).

Qualified immunity is established through a determination of whether (1) a Defendant's conduct violated a Plaintiff's constitutional rights and (2) whether those constitutional rights were clearly established at the time of the unlawful act. *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001) (*citing Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). Where it is clear that no constitutional violation has occurred, it is unnecessary to consider whether the defendants are entitled to qualified immunity. *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997). As held above, no jury would find that Plaintiff's constitutional rights were violated. Accordingly, the Court need not consider Defendant's qualified immunity argument.

## CONCLUSION

For the foregoing reasons, Defendant Louis Broward's Motion for Summary Judgment is **GRANTED** (Doc. 23), and this action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff.

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues petitioner plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal and is allowed to proceed *in forma pauperis*, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* Fed. R. App. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998).

Plaintiff is further advised that a motion filed pursuant to Federal Rule of Civil

Procedure 59(e) must be filed no later than 28 days after the entry of the judgment—a deadline that cannot be extended. A proper and timely Rule 59(e) motion *may* toll the 30-day appeal deadline, but a motion for relief from a final judgment, order, or proceeding does not toll the deadline for an appeal.

**IT IS SO ORDERED.**

**DATED: July 31, 2015**

                                                      **s/ Nancy J. Rosenstengel**
                                                      **NANCY J. ROSENSTENGEL**
                                                      **United States District Judge**